IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division

| | |
|---|---|
| AMY KENNEDY, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HEALTH PLAN FREEDOM, INC.<br><br>Defendant. | **Complaint**<br>**[Jury Trial Demanded]**<br><br>Case No. 3:23-cv-74 |

**CLASS ACTION COMPLAINT**

Plaintiff Amy Kennedy (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief, as follows:

**Preliminary Statement**

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans "outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers" *id.* § 2(6), and sought to

1

strike a balance between "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms" *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Health Plan Freedom, Inc. ("Health Plan Freedom") made telemarketing calls to numbers on the National Do Not Call Registry, including their own.

4. Furthermore, the Plaintiff alleges that Health Plan Freedom violated the Florida Telephone Solicitation Act ("FTSA") by making telemarketing calls without consent to Florida consumers who registered their phone numbers on the National Do Not Call registry ("DNC") and for making automated calls.

5. Because telemarketing campaigns typically use technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

6. A class action is the best means of obtaining redress for the Defendant's wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

7. Plaintiff Amy Kennedy is an individual Florida resident.

8. Defendant Health Plan Freedom, Inc. is a North Carolina corporation with its principal place of business in this District.

## Jurisdiction & Venue

9. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law. This Court also has

supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the FTSA claims as they arise from the same case and controversy, the telemarketing campaign of the Defendant.

10. This Court has general jurisdiction over the defendant, as it is based in this District.

11. Venue is proper under 28 U.S.C. § 1391(b)(1) because the Defendant is a resident of this District and 28 U.S.C. § 1391(b)(2) because the telemarketing calls at issue were made from this District.

## **The Telephone Consumer Protection Act**

12. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The National Do Not Call Registry</u>

13. § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

14. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

15. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

16. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

<u>The Florida Telephone Solicitations Act</u>

17. The FTSA, Fla. Stat. § 501.059 was amended by Senate Bill No. 1120 on July 1, 2021.

18. It is a violation of the FTSA to "make or cause to be made any unsolicited telephonic sales call to any residential, mobile, or telephonic paging device telephone number if the number for that telephone appears in the then-current quarterly listing published by the department." This includes to a number listed on the National Do Not Call Registry. Fla. Stat. § 501.059(4)

19. It is also a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

20. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any

5

consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

21. Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a minimum of $500.00 for each violation.

## Factual Allegations

22. Health Plan Freedom is an insurance brokerage.

23. It specializes in finding leads for insurance companies.

24. To generate these leads, Health Plan Freedom relies on telemarketing.

The Calls to Plaintiff

25. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

26. Plaintiff's telephone number is (407) 754-XXXX.

27. Ms. Kennedy registered that number on the National Do Not Call Registry on November 17, 2004.

28. Ms. Kennedy uses the number for personal, residential, and household reasons.

29. Ms. Kennedy did not provide her prior express written consent to receive telemarketing calls from the Defendant.

30. Yet, the Plaintiff received two telemarketing calls from the Defendant on January 10, 2023.

6

31. Both calls came from a (239) 494 call exchange.

32. All of the calls had a similar script.

33. The calls were designed to generate a health insurance lead.

34. The Defendant's telemarketers asked the Plaintiff her age, if she has any other insurance, and what her income was.

35. On the second call, the Plaintiff spoke with a "Lauren".

36. "Lauren" identified herself as an employee of the Defendant.

37. The two calls on January 10, 2023 were sent with an automated system for the selection or dialing of telephone numbers as the Plaintiff answered the calls and there was a pause and audible click prior to anyone appearing on the line.

38. This audible click and pause is indicative of the automated system selecting a number to call and then transferring the call to the telemarketing representative.

39. On January 20, 2023, the Plaintiff received another call from the Defendant.

40. This appeared to be a manually dialed call.

41. On this call, "Andrea" solicited the Plaintiff for the Defendant's services.

42. She stated that she works for the same insurance company as "Lauren".

43. She continued to inquire if the Plaintiff would like to purchase the Defendant's insurance related services.

44. The Plaintiff was uninterested and terminated the call.

45. The calls received by Plaintiff were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as they seek to have him sign up for Defendant's insurance lead generation services.

46. These calls qualified as telemarketing. 47 C.F.R. § 64.1200(f)(12).

47. Plaintiff and all members of the class defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were subjected to annoying and harassing calls that constitute a nuisance. The calls also occupied Plaintiff's and class members' telephone lines from legitimate communication.

## Class Action Statement

48. Pursuant to Fed. R. Civ. P. 23(b)(2) and/or (b)(3), the Plaintiff brings this action on behalf of the following putative classes (the "Class"):

> **Florida Telephone Solicitation Act Autodial Class:** All persons in the U.S. (1) who received a telephonic sales call regarding Defendant's goods and/or services (2) from or into Florida (3) using the same equipment or type of equipment utilized to call Plaintiff (4) from July 1, 2021 through the date of trial.
>
> **Florida Telephone Solicitation Act Do Not Call Registry Class:** All persons in the U.S. (1) who received a telephonic sales call regarding Defendant's goods and/or services (2) to a number listed on Florida's "no sales solicitation calls" list (3) from July 1, 2021 through the date of trial.

> **Telephone Consumer Protection Act Do Not Call Registry Class:** All persons in the U.S. (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days (2) but who received more than one telemarketing call from or on behalf of Defendant (3) within a 12-month period (4) from the four years prior to the filing of the complaint through the date of trial.

49. Defendant and its employees or agents are excluded from the Class. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

50. Plaintiff brings all claims in this action individually and on behalf of Class Members against Defendant.

## Numerosity

51. Members of the Class are so numerous that their individual joinder is impracticable.

52. On information and belief, based on the technology used to call Plaintiff, which is used to make calls *en masse*, Members of the Class number in the thousands.

53. The precise number of Class Members and their identities are unknown to Plaintiff at this time but may be determined through discovery.

54. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

## Commonality

55. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members.

56. Common legal and factual questions include, but are not limited to, whether Defendant have violated the Telephone Consumer Protection Act or Florida

9

Telephone Solicitation Act, and whether Class Members are entitled to actual and/or statutory damages for the aforementioned violations.

## Typicality

57. The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other Class Members, received unsolicited telephonic sales calls from the Defendant without giving them her consent to receive such calls.

## Adequacy of Representation

58. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class Members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.

59. The interests of Class Members will be fairly and adequately protected by Plaintiff and her counsel.

## Superiority

60. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members.

61. Many of the Class Members likely lack the ability and/or resources to undertake the burden and expense of individually prosecuting what may be a complex and extensive action to establish Defendant's liability.

62. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system. This strain on the parties and the

judicial system would be heightened in this case, given the complex legal and factual issues at play.

63. Individualized litigation also presents a potential for inconsistent or contradictory judgments.

64. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.

65. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
## Violation of the Florida Telephone Solicitation Act,
## Fla. Stat. § 501.059
## On Behalf of Plaintiff and the Florida Telephone Solicitation Act Autodial Class

66. Plaintiff repeats and incorporates the allegations set forth in foregoing paragraphs as if fully set forth herein.

67. Plaintiff brings this claim individually and on behalf of the Florida Telephone Solicitation Act Autodial Class Members against Defendant.

68. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

69. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

70. Defendant failed to secure prior express written consent from Plaintiff and the Class Members.

71. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

72. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

73. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

## COUNT II
## Violation of the Florida Telephone Solicitation Act,
## Fla. Stat. § 501.059
## On Behalf of Plaintiff and the Florida Telephone Solicitation
## Act National Do Not Registry Call Class

74. Plaintiff repeats and incorporates the allegations set forth in foregoing paragraphs as if fully set forth herein.

75. Plaintiff brings this claim individually and on behalf of the Florida Telephone Solicitation Act National Do Not Call Registry Class Members against Defendant.

76. It is a violation of the FTSA to "make or cause to be made any unsolicited telephonic sales call to any residential, mobile, or telephonic paging device telephone number if the number for that telephone" on the National Do Not Call Registry. *See* Fla. Stat. § 501.059(4).

77. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

78. Defendant failed to secure prior express written consent from Plaintiff and the Class Members.

79. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without

13

Plaintiff's and the Class members' prior express written consent even though the Class members were on the National Do Not Call Registry.

80. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

## COUNT III
## Telephone Consumer Protection Act
## (Violations of 47 U.S.C. § 227)
## (On Behalf of Plaintiff and the National Do Not Call Registry Class)

81. Plaintiff repeats and incorporates the allegations set forth in foregoing paragraphs as if fully set forth herein.

82. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

83. The Defendant's violations were negligent, willful, or knowing.

84. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

85. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Injunctive relief prohibiting Defendant from using an autodialer to advertise their goods or services;

B. A judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA or FTSA and $1,500 for each knowing or willful violation; and

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class the Court deems appropriate, finding that Plaintiff are a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D. For a trial by jury; and,

E. Such other relief as the Court deems just and proper.

MAGINNIS HOWARD
*Counsel for Plaintiff*

<u>/s/ *Karl S. Gwaltney*</u>
KARL S. GWALTNEY
N.C. State Bar No. 45118
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Telephone: 919-526-0450
Fax: 919-882-8763
kgwaltney@maginnishoward.com
**Local Civil Rule 83.1 Counsel for Plaintiff**


Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(617) 485-0018
anthony@paronichlaw.com
***Subject to Pro Hac Vice***

16